JUAN TRAVIESO ET AL., Plaintiffs and Appellants, *v.* CHLORIS McCORMICK ET AL., Defendants and Appellees.

No. 7296. Argued December 7, 1938.—Decided February 16, 1939.

L. *Santiago Carmona*, for appellants. *Carlos J. Torres*, for Chloris
McCormick.

Mr. Justice De Jesús delivered the opinion of the Court.

On March 21, 1932, Juan and Felícita Travieso Marín,
brothers, filed the original complaint in this suit in the Dis-
trict Court of Bayamón to recover an interest which they
allege they have in a certain farm situated in the municipality
of Guaynabo. The suit was filed originally against defend-
ants Chloris McCormick, Enrique Carbia, Salvador Sierra
and others, some of which were not subpoenaed, and when
trial began plaintiffs waived their action in regard to some
others, thereby remaining as defendants Chloris McCormick
and Enrique Carbia. Therefore in the summary of the plead-
ings of the parties which we will make we will leave out the
other defendants, who for one reason or another are not
parties to this suit, limiting our attention to the allegations
of plaintiffs and of defendants McCormick and Carbia.

On February 17, 1933, the complaint was amended and
the pleadings against these two defendants can be summed
up as follows: That Aquilino Marín Velázquez, plaintiffs'
grandfather on their mother's side, died in October, 1918,
at Río Piedras, leaving a will dated July 6, 1918, in which
he instituted as his only and universal heirs his four legiti-
mate sons of last names Marín and Ollor, and his grand-
children, the plaintiffs, who in turn are legitimate children
of his daughter Hermenegilda Marín Ollor, who died before
him and was the wife of Juan Travieso, plaintiffs' father.
That the estate left by Aquilino Marín Velázquez consisted
of a parcel of land of eighteen *cuerdas* situated in the ward
Los Frailes, of Guaynabo, of which a fifth part in com-

mon fell to the plaintiffs as their inheritance from their grandfather. That in the year 1919, plaintiffs then being minors, their father, Juan Travieso, without the required judicial authorization, appeared before a Notary, representing them, and with the other heirs together sold by a public deed to Elías P. Wilcox an undivided half of said farm. The area of said farm later turned out to be 23 *cuerdas* and not 18 as appeared in the title. That in the year 1919 Elías P. Wilcox sold his share in said property to Rafael Bernabe, who acquired it knowing that Wilcox had no just and legal title which he could convey him and that Bernabe, in the year 1922, filed in his own name in the District Court of San Juan a dominion title proceeding on said property, in which proceedings the former owners were neither mentioned nor notified. That a decision was rendered on December 7, 1922, in favor of the petitioner, giving him dominion title on a parcel of 11.97 *cuerdas* which turned out to be the area of the portion which Wilcox sold him. That Bernabe falsely alleged that he was in possession of said parcel, when in reality he did not take possession of it until the 23rd of January of the following year, aided by a writ of injunction issued by the District Court of San Juan, Second Section. That in the year 1930 Jaime Fort, who was the person used by Bernabe to take possession of the farm in the aforementioned manner, sold it to defendant McCormick and that the latter knew when she acquired the property that the vendor's title was null and void. The other defendant, Enrique Carbia, without any title whatsoever, in the year 1923 took possession of another parcel of three *cuerdas* of said farm which originally was thought to have an area of 18 *cuerdas*, but turned out to have 23, without paying any rent to plaintiffs for their joint tenancy consisting of a fifth part of said three *cuerdas*. That the crops produced by a fifth undivided portion of the parcel occupied by Mrs. McCormick amount to $2,000. The complaint ends praying that judgment be rendered ordering defendants to deliver to plain-

tiffs a fifth undivided portion of each of the aforesaid parcels and also to pay $5,000 and $2,000 respectively for the crops produced or which should have been produced by said two properties, and that defendants be ordered to pay also the costs, expenses and attorney's fees.

Defendants answered separately. Defendant McCormick denied the allegations of the complaint and alleged prescription, the ordinary prescription, having been in possession of the property quietly, publicly and peacefully and without any interruption for ten years among persons present, as well as the extraordinary prescription of thirty years.

The defendant Carbia also denied the allegations of the complaint and against the same alleged that any defect which Wilcox's title may have had was ratified by acts of the plaintiffs. He also alleged prescription, the ordinary as well as the extraordinary one, and also that he was a third party having acquired the property from the person appearing in the Registry of Property as owner, and without there appearing in said Registry any defect which would invalidate said title.

The Court's findings of facts may be summed up as follows: Aquilino Marín Velázquez died at Río Piedras, in October, 1918, leaving as his testamentary heirs his legitimate children Juan Antonio, María Nicomedes, Concepción and Aquilino Marín Ollor, and his grandchildren the plaintiffs Juan and Felícita Travieso Marín, children of his legitimate daughter Hermenegilda Marín Ollor, who died before the testator.

These heirs received in joint tenancy a parcel of land the area of which was supposedly eighteen *cuerdas,* but later turned out to be twenty-three *cuerdas,* recorded in the name of deceased Aquilino Marín Velázquez in the Registry of Property.

On August 9, 1919, the legitimate children of deceased, in their own right, and the grandchildren, the minors Juan and

Felícita Travieso Marín, represented by their father Juan Travieso, who had *patria potestas* over them, appeared before the notary Juan B. Soto and together executed a deed of sale of the half in joint tenancy of said parcel in favor of Elías B. Wilcox. The father, Juan Travieso, did not obtain the judicial authority for the sale that he made of the real property of his children, but eighteen days later the minor Juan Travieso Marín was emancipated by his father through a deed executed for that purpose, which deed was not recorded in the Civil Registry, as is required by Section 233 of the Civil Code (1930 ed.) in order that the emancipation may prejudice a third party. On the same day of the emancipation, the plaintiff Juan Travieso and the plaintiff Felícita Travieso, who had also been emancipated by marriage, together with their father Juan Travieso, executed a deed before Notary H. Torres Solá in which they ratified the sale which had been made by their father without judicial authority and in the same deed they sold to Octavio García Salgado their share in the other half of said parcel. On the following day, August 28, 1919, Wilcox sold by public deed the aforementioned joint tenancy to Rafael Bernabe. When the joint tenancy existing between Octavio García Salgado and Rafael Bernabe on said farm was divided, 11.97 *cuerdas* corresponded to Rafael Bernabe, on which he filed dominion title proceedings in the District Court of San Juan, the corresponding judgment being rendered and his dominion title recorded in the Registry of Property on September 18, 1922, at page 129 of vol. 56 of Río Piedras, first entry. On November, 1922, Bernabe sold the whole of the undivided farm to Manuel Prida, who recorded his title in the Registry of Property. In May, 1923, Prida sold to Jaime and Gustavo Fort, which gave rise to the third entry. In September, 1923, Gustavo Fort sold to Jaime Fort, as appears from the fourth entry. On August 15, 1932, Jaime Fort sold the farm to Tomás Martínez Morales, as appears from the fifth entry, and on the same date the latter sold the farm to the defend-

ant Chloris McCormick, who is now in possession and who also recorded her title in the Registry of Property.

The judge who rendered judgment also considered as proven that on May 11, 1923, the District Court of San Juan rendered judgment giving the dominion title to Manuel Prida on another parcel of eight *cuerdas* situated in the ward Monacillos, of Río Piedras, and the dominion title which Prida had proven was recorded on the 7th of June, 1923, at folio 8, vol. 59 of Río Piedras, property 2527, first entry, and by deed of May 23, 1923, Manuel Prida sold the said farm to Enrique Carbia, thus giving rise to the second entry of the piece of land in the Registry of Property.

Based on these facts, the judgment dismissing the complaint without any special award of costs was rendered, and from said judgment the plaintiffs took appeal. It is difficult to understand what the assignment of errors is, for at least inasmuch as it refers to the first three errors a separate assignment is not made as required by the rules of this Court. The appellee, Mrs. McCormick, is quite right when she says on page 9 of her brief:

"We repeat to this Hon. Supreme Court that no strict assignment of errors exist, but not wishing to evade the question and wanting to discuss it frankly, we have read and reread appellants' brief trying to find out what at times does not appear clear, and we have reached the conclusion that the following is the intended assignment of errors:

"*First:* In recognizing the validity and efficacy of the dominion titles presented by defendants notwithstanding the fact that the inscription of dominion title in favor of Aquilino Marín Velázquez has not been declared null.

"*Second:* Having held as valid the deed of ratification executed by plaintiffs Juan and Felícita Travieso, and their father, notwithstanding the fact that the deed so ratified had been executed by their father during their minority and without the necessary order of the Court.

"*Third:* In declaring that it was proven that on August 9, 1919, by deed before notary Juan B. Soto, Juan and Felícita Travieso sold a joint tenancy which belonged to plaintiffs in the property of Chloris McCormick.

"*Fourth:* In holding that the purchaser of real estate with his title recorded in the Registry of Property is considered as a third party as regards defects or vices which do not appear from the Registry.

"*Fifth:* In not having declared as proven the damages caused to plaintiffs, and therefore in not having made any provision as regards them."

In order to avoid unnecessary repetitions and due to the fact that the alleged errors are so intimately related, we will discuss them together.

There can be no doubt that the deed of sale executed before Juan B. Soto by which plaintiffs' father, without any judicial authority, sold half of the joint tenancy which said plaintiffs had on the farm, was null and void as regards these plaintiffs, for since they were minors at the time of the sale, the father could not dispose of their real property without the corresponding judicial authority. That deed, which was null on the date of its execution inasmuch as regards plaintiffs, was convalidated when they, then emancipated minors, one emancipated by his father (Section 233 of the Civil Code, 1930 ed.), and the other by marriage (Section 239 of the same Code), appeared before the Notary H. Torres Solá and together with their father ratified the sale which he carried out without the necessary judicial permission. Appellants allege that the emancipation by the father was not valid because it was not recorded in the Civil Registry. Appellants are not correct in their contention because the necessity of recording it is only in order that it may be effective as against third parties, and a person like Mr. Wilcox, who was a party to the contract ratified by them after their emancipation, cannot be called a third party. As Section 1265 of the Civil Code provides, "confirmation purges the contract of all defects which it may have contained from the moment of its execution." Manresa, in his commentaries to section 1313 of the Spanish Civil Code, which is the same as 1265 of ours, says:

"A ratification is more like a confirmation, in reality being a kind thereof: it is a limited confirmation used to cure a defect, that is, the making of a contract not by the interested party himself, but by another person who was not his agent or *who exceeded himself in his powers as such,* a defect or abuse which makes the contract null if the interested person does not ratify what was done in his name." 8 Manresa, "Comentarios al Código Civil", 800, 1907 ed. (Our italics).

It is true that as a dominion title in the name of Aquilino Marín Velázquez was recorded, the dominion title proceeding on the same farm or a part of it in the name of other persons could not be legally recorded, but leaving aside the dominion title proceedings which Bernabe carried out, from whom McCormick derived her title, and that carried out by Prida, from whom Carbia derives his title, independently of said dominion proceeding, we repeat, both defendants acquired a valid title from the plaintiffs when the latter ratified the contract executed by their father with Mr. Wilcox, and in selling, when already emancipated, to Octavio García Salgado, the other half that remained to them of the joint tenancy which they had inherited in the eighteen-*cuerdas* parcel.

How could the court refuse to declare as proven the sale made by plaintiffs by deed on August 9, 1919, before notary Juan B. Soto, if said deed was presented in evidence, as well as deed No. 115 of August 27, 1919, before Notary H. Torres Solá, in which plaintiffs ratified the former?

It is clear that as defendants have a valid title the crops of their respective farms belong to them and in collecting them they exercised their rights of dominion. Therefore, no award should be made against them ordering them to return the crops to plaintiffs.

For the foregoing reasons the appeal is dismissed and the judgment affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.